UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN SPERANEO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 4:12-CV-578-JAR |
| ) | |
| ZEUS TECHNOLOGY, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Travis Reed's Motion to Dismiss Claims Against Him for Lack of Personal Jurisdiction and, alternatively, Subject Matter Jurisdiction [ECF No. 8]. The motion is fully briefed and ready for disposition. For the following reasons, the motion will be denied.

**Background**

Plaintiff John Speraneo ("Speraneo") asserts a claim against Defendant Travis Reed ("Reed"), a resident of California, for age discrimination in violation of the Missouri Human Rights Act ("MHRA"), Mo.Rev.Stat. §213.010, et seq., arising from Reed's supervision of Speraneo in Missouri while he was employed by Defendant Zeus Technology, Inc. ("Zeus") as a regional sales manager. Speraneo alleges Reed is subject to personal jurisdiction in Missouri "due to his continued and systematic contacts" with Speraneo in Missouri, "along with at least one business trip to St. Louis to meet Speraneo and a prospective client." (Complaint, Doc. No. 6, ¶11). Reed has filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and, alternatively, 12(b)(1). Reed asserts the Court lacks personal jurisdiction over him because he engaged in no actions in Missouri giving rise to this lawsuit. Alternatively, Reed asserts the

Court lacks subject matter jurisdiction over the claims alleged against him because Speraneo failed to name Reed in his charge of discrimination.

**Personal Jurisdiction**

In the context of a motion to dismiss, this Court has held as follows:

> The party invoking jurisdiction of a federal court bears the burden to show that jurisdiction exists. To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff is only required to make a prima facie showing of personal jurisdiction over the defendant. If the district court relies on pleadings and affidavits, the court must look at the facts in the light most favorable to the party invoking personal jurisdiction, and resolve all factual conflicts in favor of that party.

Buckley v. Sheraton Overseas Management Corp., 2010 WL 2025272, *1-2 (E.D.Mo. May 20, 2010) (citing Anheuser-Busch, Inc. v. City Merchandise, 176 F.Supp.2d 951, 955 (E.D.Mo.2001) (internal citations omitted)). See also Norrise v. Union Pacific Railroad Co., 2008 WL 2859155, *3 (E.D. Mo. July 23, 2008).

In analyzing a motion to dismiss for lack of personal jurisdiction, the Court must engage in a two-step inquiry to determine whether it may exercise jurisdiction over a non-resident defendant. First, the court must determine whether the defendant committed one of the acts enumerated in the state long-arm statute. Buckley, 2010 WL 2025272, *1 (citing Angelica Corp. v. Gallery Mfg. Corp., 904 F.Supp. 993, 996 (E.D.Mo.1995). If so, then the court must determine whether the exercise of personal jurisdiction over the defendant comports with the requirements of due process. Id. (citations omitted). See also Porter v. Berall, 293 F.3d 1073, 1075 (8th Cir. 2002). Because Missouri's long-arm statute has been construed to permit jurisdiction to the fullest extent permitted by the Due Process Clause, see Porter, 293 F.3d 1073 at 1075, the Court will "turn immediately to the question of whether the assertion of personal jurisdiction would violate due process." Id.. See also See Bell v. Imperial Palace Hotel/Casino, Inc., 200 F. Supp. 2d 1082,

1085 (E.D. Mo. 2001); Meredith, Inc. v. Marketing Resources Group of Oregon, Inc., 2005 WL 2334294, *2 (E.D. Mo. Sep. 23, 2005)("The analysis is collapsed into the single question of whether asserting jurisdiction violates the Due Process Clause.")).

The due process test for personal jurisdiction has two related components, the "minimum contacts" inquiry and the "reasonableness" inquiry. Sufficient minimum contacts exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The minimum contacts necessary for due process may be the basis for either "general" or "specific" personal jurisdiction. Hogan v. Cosmic Concepts, 2011 WL 5976105, *2 (E.D. Mo. Nov. 30, 2011). General jurisdiction arises when a defendant's contacts with the forum state are so "continuous and systematic" that the defendant may be subject to suit there for causes of action entirely distinct from the in-state activities; specific jurisdiction arises when the defendant has purposely directed its activities at the forum state, and the cause of action relates to those activities. Id. (citing Norrise, 2008 WL 2859155, * 4 (citing Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). The second stage of the due process inquiry addresses whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice," that is, whether it is reasonable under the circumstances of the particular case. International Shoe Company v. Washington, 326 U.S. 310, 316 (1945).

The Eighth Circuit applies a five-factor test in analyzing the constitutional requirements needed for personal jurisdiction: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." See Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010). The first three factors are primary factors,

while the latter two are secondary. Stanton v. St. Jude Med., Inc., 340 F.3d 690, 693-94 (8th Cir. 2003). But, the Court "must look at all of the factors in the aggregate and examine the totality of the circumstances in making a personal jurisdiction determination." Arden, 614 F.3d at 794 (citing Northrop King Co. v. Companie Productora Semillas Algodoneras, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995).

In support of his motion to dismiss, Reed argues his occasional trips were "random, fortuitous and attenuated contacts with Missouri" and are not sufficient to support general jurisdiction over him in Missouri. He cites to Sybaritic, Inc. v. Interport Int'l, Inc., 957 F.2d 522, 524 (8th Cir. 1992), and Morris v. Barkbuster, 923 F.2d 1277, 1279 (8th Cir. 1991), where brief trips to the forum state were found to be insufficient contact.

By declaration dated April 19, 2012, Reed declares that during the 33 months he supervised Speraneo, he recalls traveling to Missouri to meet with Speraneo "on two or three occasions" and staying in Missouri for one night on each of those occasions. (Declaration of Travis Reed, Doc. No. 9-2, Ex. B, ¶2). Reed declares he never officed or worked in Missouri during his employment with Zeus, and that the "overwhelming majority" of his work occurred in the State of California. He primarily supervised Speraneo remotely from his office in California, and their interactions occurred largely through telephone and email communications, although they had numerous other in-person meetings, primarily in California and Texas. (Id., ¶ 3). Reed declares he never disciplined Speraneo while he was in Missouri. (Id., ¶ 2). Finally, Reed declares that as an individual living and working in California, it would be a great hardship for him to have to appear in a Missouri court to defend this action. (Reed Declaration, ¶ 4).

In response, Speraneo argues the Court has specific jurisdiction over Reed because Reed directed his discriminatory activities at a Missouri resident, and because his claims against Reed arise directly from those activities. (Opposition to Motion to Dismiss, Doc. No. 14, p. 4). Speraneo further argues that throughout his complaint, he has clearly alleged that the effects of Reed's discriminatory conduct were felt in Missouri, where he was located, thereby subjecting Reed to the jurisdiction of Missouri's courts. (Opposition, pp. 5-6, citing <u>Bryant v. Smith Interior Design Group, Inc.</u>, 310 S.W.3d 227 232 (Mo. 2010) ("Extraterritorial acts that produce consequences in the state, such as fraud, are subsumed under the tortious act section of the long-arm statute.")). <u>See</u> <u>also</u> <u>Schwartz & Assocs. v. Elite Line, Inc.</u>, 751 F.Supp. 1366, 1369 (E.D. Mo. 1990)(Where a plaintiff alleges an extraterritorial tortious act that caused harm in Missouri, the allegations are "sufficient to support the exercise of personal jurisdiction under the Missouri long-arm statute.").[1]

Reed replies that the fact that his conduct outside of Missouri produced effects in-state does not establish the required purposeful contact for purposes of personal jurisdiction. (Reply to Plaintiff's Response, Doc. No. 19, p. 4).

Viewed in the light most favorable to Speraneo, the facts demonstrate that while employed by Zeus, he worked primarily in Missouri, although his work duties required him to travel to other areas in the Central Region for which he was the Sales Manager. Reed supervised Speraneo remotely from his office in California, and their interactions occurred largely through telephone and email communications, although Reed traveled to Missouri to meet with Speraneo "on two or three occasions" and stayed in Missouri for one night on each of those occasions.

---

[1]The Eighth Circuit considers the "effects" test as "merely an additional factor to consider when evaluating a defendant's relevant contacts in the forum state." <u>Arden</u>, 614 F.3d at 796-97.

5

The cases relied on by Reed are distinguishable. In <u>Sybaritic</u>, the court found Interport's contacts with Minnesota, consisting of a visit and exchange of telephone and mail communications, "involved only preliminary negotiations" of an agency contract. Further, the activities related to the contract that occurred in Minnesota, such as the "manufacture of product [and] origination of payments," were the "unilateral acts" of Sybaritic rather than any actions by Interport that would establish personal jurisdiction in Minnesota. 957 F.2d at 525. In <u>Morris</u>, Barkbuster, an Ohio corporation with its principal place of business in Arizona, sold a log splitter to a Minnesota corporation. 923 F.2d at 1279. Pursuant to the sales contract, Barkbuster shipped material to Minnesota and sent five employees to Minnesota to conduct a physical inventory. In addition, its owners attended a dinner party in Minnesota relating to the sale of its products. <u>Id</u>. A few years later, Barkbuster was sued in the federal district court of Minnesota for negligent design and failure to warn resulting from an accident in Kentucky involving one of its log splitters. In granting Barkbuster's motion to dismiss for lack of personal jurisdiction, the court explained that although it shipped parts to Minnesota and sent its employees there, "these actions related to the implementation of the sales contract...not to the design of the log splitters. <u>Id</u>. at 1281-82. In other words, Barkbuster's forum-related contacts were not substantively relevant, or even necessary, to proof of the claim. <u>Id</u>.

The instant case is more factually similar to <u>International Healthcare Exchange, Inc. v. Global Healthcare Exchange, LLC</u>, 470 F.Supp.2d 345 (S.D. N.Y. 2007), which held that a Chicago-based supervisor's communications with its employee in New York via telephone, email and fax, regarding work assignments she claimed were instances of illegal disparate treatment, as well as her complaints about those assignments, demonstrated a purposeful transaction of business that had a substantial nexus to her discrimination claim sufficient to establish a basis for

the Court's exercise of personal jurisdiction under New York's long-arm statute. In determining that this assertion of jurisdiction comported with due process, the Court found the supervisors were "'primary participants' in activity whose effects would be felt by the Plaintiff in the forum state." Id. at 359. "Because it is reasonably foreseeable that misconduct in the exercise of their supervisory authority over an employee might expose them to liability in the state of employment, the court's exercise of jurisdiction over [individual supervisors] is appropriate." Id. at 359. See also Launer v. Buena Vista Winery, Inc., 916 F.Supp. 204, 210 (E.D.N.Y.1996) (considering California-based employer's communications with its employee in New York and decision made in California not to rehire plaintiff as evidence of transacting business).

Here, Reed's alleged acts, i.e., "repeated communications, false promises, derogatory comments, and efforts to force Speraneo to resign," were related to Speraneo's ongoing employment with Zeus, transmitted to Speraneo in Missouri, and underlie his discrimination claim. Further, the effects of Reed's discriminatory conduct and resulting constructive discharge were felt in Missouri. (Opposition to Motion to Dismiss, Doc. No. 14, p. 7). As in International Healthcare, Reed's supervision of Speraneo, a Missouri resident, in Missouri, constitutes purposeful contact with Missouri. The Court finds the burden inherent in having Reed defend himself in Missouri is mitigated by the fact that he will most certainly be a witness in a trial against Zeus. See, International Healthcare, 470 F.Supp.2d at 360.

Thus, there has been a sufficient showing that Reed had a reason to expect that his exercise of supervisory authority in California over an employee in Missouri would have direct consequences in Missouri. Speraneo has met his burden at this stage of the inquiry, and set forth sufficient evidence to constitute a prima facie showing that Reed could have or should have

expected his acts to have consequences in Missouri. For these reasons, the motion to dismiss for lack of personal jurisdiction will be denied.

**Subject Matter Jurisdiction**

Fed.R.Civ.P. 12(b)(1) requires a court to dismiss a claim if the court lacks subject matter jurisdiction over it; however, dismissal for lack of subject matter jurisdiction is not granted lightly. Kaminsky v. Missouri, 2007 WL 2725821, *2 (E.D.Mo. Sept. 11, 2007) (citing Wheeler v. St. Louis Southwestern Ry. Co., 90 F.3d 327, 329 (8th Cir.1996)). Dismissal is proper when a facial attack on the complaint's alleged basis for subject matter jurisdiction shows there is no basis for jurisdiction Id. The standards applied to a Rule 12(b)(1) motion to dismiss are the same as those that apply to a Rule 12(b)(6) motion to dismiss. Id. (citations omitted.).[2]

Reed argues the Court lacks subject matter jurisdiction over Speraneo's MHRA claims because he failed to exhaust his administrative remedies when he failed to name Reed in his Missouri Commission on Human Rights (MCHR) charge of discrimination. In response, Speraneo argues his failure to make Reed a party to the MCHR charge is not fatal to his claim under Missouri law, citing Hill v. Ford Motor Co., 277 S.W.3d 659 (Mo.banc 2009). In Hill, the Court held that "the failure to make [a supervisor] a party at the administrative action before the EEOC or the Missouri Commission on Human Rights ('MCHR') will bar suit against him only if it resulted in prejudice." Id. at 662.

---

[2]The Court must view the allegations in the complaint in the light most favorable to the plaintiff and accept the allegations as true and draw all reasonable inferences in favor of the nonmoving party. Frey v. City of Herculaneum, 44 F.3d 667, 671(8th Cir. 1995). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (1957).

The Missouri Human Rights Act requires that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice" must file a charge of discrimination "which shall state the name and address of the person alleged to have committed the unlawful practice and which shall set forth the particulars thereof." Mo.Rev.Stat. § 213.075(1). Further, a "claimant must exhaust administrative remedies by timely filing an administrative complaint and either adjudicating the claim through the MCHR or obtaining a right-to-sue letter." Hogan v. Cosmic Concepts, 2011 WL 4528470, *2 (E.D.Mo. Sept. 29, 2011)(citing Tart v. Hill Behan Lumber Co., 31 F.3d 668, 671 (8th Cir.1994)(citing Mo.Rev.Stat. §§ 213.075, 213.111(1)). "[A]dministrative complaints are interpreted liberally in an effort to further the remedial purposes of legislation that prohibits unlawful employment practices." Id.

Generally, in order for a plaintiff to exhaust his administrative remedies, he must name all of those alleged to be involved in the discriminatory behavior in his original administrative charge. Hill, 277 S.W.3d at 669. The purpose of naming a party in the charge of discrimination is to provide notice to the charged party and an avenue for voluntary compliance. Id. (citing Glus v. G.C. Murphy Co., 562 F.2d 880, 888 (3rd Cir.1977)). For these goals to be met, the court must find "a substantial identity of interest between the parties sued and those charged." Id.

In evaluating whether a "substantial identity of interest" exists, the court considers four factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC [or MCHR] complaint; 2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC [or MCHR] proceedings; 3) whether its absence from the EEOC [or MCHR] proceedings resulted in actual prejudice to the interests of the unnamed party; and 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Hill, 277 S.W.3d at 669-70.

In support of his motion to dismiss, Reed argues the Hill factors support a finding that there is no substantial identity of interest between Zeus and Reed. First, Speraneo had actual knowledge of Reed's alleged role at the time he filed his charge of discrimination. Second, Reed's interests in conciliation were not so similar to the interests of Zeus that notice to him was unnecessary; their economic positions and risk tolerance are incomparable. Next, Reed's absence from the administrative proceedings resulted in actual prejudice to him because he did not know Speraneo was pursuing a claim against him as an individual and had no opportunity to submit documents or otherwise respond to Speraneo's charge. Finally, Reed never represented to Speraneo that he should deal with Reed through Zeus. (Memorandum in Support of Motion to Dismiss, Doc. No. 9, pp. 10-12). Reed relies on Borders v. Trinity Marine Products, Inc., 1:10CV146HEA, 2010 WL 5139343 (E.D. Mo. Dec. 9, 2010) and Eckerman v. KMBC-TV, 4:08CV994, Doc. 69 (W.D. Mo. July 17, 2009), where individual defendants were dismissed under similar circumstances.

In response, Speraneo does not dispute that he knew Reed, but argues the fact he did not name Reed does not preclude a finding of identity of interest. (Opposition to Motion to Dismiss, Doc. No. 14, p. 12). Regarding the second Hill factor, Speraneo states that because voluntary conciliation between Speraneo and Zeus would necessarily require Reed's compliance, the goals of giving notice to the charged party and providing an avenue for voluntary compliance have been met. (Id., pp. 12-13) Regarding the third factor, Speraeno argues that Reed knew of the charges and had the opportunity to defend his discriminatory conduct. Therefore, no prejudice resulted from Speraneo's failure to specifically him in the charge. (Id., p. 13). Finally, Speraneo states that in his mind, Zeus and Reed represented the same thing to him: his employer. Because the

majority of his complaints about Zeus's discriminatory conduct was based on Reed's supervision of him, the identity of interests between the two has been established. (Id., p. 14).

In reply, Reed insists the Hill factors weigh in favor of finding insufficient identity of interest and dismissing Speraneo's claims against him. (Reply, Doc. No. 19, pp. 2-4).

Several federal district courts have discussed Hill in the context of fraudulent joinder. See e.g. Borders, 2010 WL 5139343. Because Hill holds there are circumstances where a plaintiff's failure to name a supervisor in a charge of discrimination does not bar naming the supervisor in a future lawsuit, district courts have concluded that "there is a reasonable basis for predicting that the state's law *might* impose liability against the defendant." Jameson v. Gough, 4:09CV2021RWS, 2010 WL 716107, *3-4 (E.D.Mo. Feb. 24, 2010) (citations omitted.). Thus, Speraneo has stated a plausible basis for jurisdiction despite his failure to name Reed in his charge and the motion to dismiss for lack of subject matter jurisdiction will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Travis Reed's Motion to Dismiss Claims Against Him for Lack of Personal Jurisdiction and, Alternatively, Subject Matter Jurisdiction [8] is **DENIED**.

Dated this 13th day of July, 2012.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE